**In re JOHN PETERSON MOTORS, INC., Debtor.**

**Robert C. NEILL, Trustee, Plaintiff,**

v.

**John BORRESON, Defendant and Third-Party Plaintiff,**

v.

**John PETERSON, Third-Party Defendant.**

**Bankruptcy No. 4–84–1908.
Adv. No. 4–85–151.**

United States Bankruptcy Court, D. Minnesota.

Jan. 10, 1986.

See also 47 B.R. 551.

Phillip L. Kunkel, Hastings, Minn., for plaintiff.

Regina M. Chu, Minneapolis, Minn., for defendant/third-party plaintiff.

Donald John Peterson, Lake City, Minn., pro se.

### ORDER DISMISSING
### THIRD–PARTY COMPLAINT

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on November 27, 1985, on the motion of the third-party defendant, John Peterson, for dismis-

sal of the third-party complaint filed by the defendant, John Borreson. Pursuant to Bankruptcy Rule 7012 and Fed.R.Civ.P. 12(b)(1) and (6), Peterson asserts that this Court lacks subject matter jurisdiction and that Borreson has failed to state a claim upon which relief can be granted. Phillip L. Kunkel appeared for the plaintiff and Regina M. Chu appeared for the defendant and third-party plaintiff. John Peterson appeared *pro se*. Based on the files and records, the memoranda and arguments of counsel, I make the following Memorandum Order.

## BACKGROUND

The debtor automobile dealership, John Peterson Motors, Inc., filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 30, 1984. An examiner was appointed pursuant to 11 U.S.C. § 151104 on February 25, 1985. Pursuant to 11 U.S.C. § 547 the examiner commenced this adversary proceeding against Borreson seeking to recover $43,856.68 in allegedly preferential payments. Subsequently Borreson filed an answer together with a third-party complaint naming John Peterson individually as a defendant. Borreson alleges that Peterson is liable for: the return of $14,000.00 owed as a result of the rescission of an alleged stock purchase agreement,[1] indemnity or contribution for any sums recovered against Borreson by the plaintiff, and for costs and disbursements.

The case was converted from Chapter 11 to Chapter 7 on July 10, 1985. The Chapter 7 trustee, Robert C. Neill, was substi-

tuted for the examiner as the plaintiff on October 7, 1985.

## DISCUSSION

The motion to dismiss the third-party complaint is grounded in two provisions of Rule 12, Fed.R.Civ.P. First, Peterson alleges that this court does not have subject matter jurisdiction to hear the $14,000.00 claim. Peterson also alleges that both the $14,000.00 claim for monies owed on rescission of the alleged stock purchase agreement and the claim for indemnity or contribution for any and all sums recovered by the trustee in the main action fail to state a claim upon which relief can be granted. I agree that this court does not have the requisite subject matter jurisdiction to hear the $14,000.00 claim, and I have decided that the claim for indemnity or contribution must be dismissed for the same reason.[2]

■ The proper focus on a motion to dismiss for lack of subject matter jurisdiction must be on the district court because this court is not jurisdictionally a separate court. *See Firestone v. Dale Beggs & Associates (In re Northwest Cinema Corp.)*, 49 B.R. 479 (Bktcy.D.Minn.1985). The district court has original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). The bankruptcy court is a unit of the district court. 28 U.S.C. § 151.[3] Thus, 28 U.S.C. § 1334 defines the limits of this court's subject matter jurisdiction.

---

**1.** Both parties agree that Borreson paid $44,000.00 pursuant to an agreement and that the agreement has since been rescinded. There is, however, a dispute over the nature of the agreement. While Borreson claims that he agreed to pay $100,000.00 over the course of several months in exchange for a 49% stock interest in John Peterson Motors, Inc., Peterson claims that Borreson simply agreed to lend John Peterson Motors, Inc. $100,000.00 and that there was no agreement to transfer ownership in John Peterson Motors, Inc.

**2.** Although Borreson has asserted a lack of jurisdiction over the subject matter defense pursuant

to Fed.R.Civ.P. 12(b)(1), the lack of subject matter jurisdiction also may be asserted at any time by the Court *sua sponte*. *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir.1980).

**3.** The district court may provide that bankruptcy cases and proceedings shall be referred to the bankruptcy judges. 28 U.S.C. § 157(a). Pursuant to the order of reference dated July 27, 1984 and Local Bankruptcy Rule 103(b), the District Court for the District of Minnesota made such a referral.

The outer limits of the statutory jurisdictional grant consist of civil proceedings "related to cases under Title 11". 28 U.S.C. § 1334(b). A number of courts have attempted to define "related" proceedings. *See, e.g., In re Lafayette Radio Electronics Corp.,* 761 F.2d 84 (2nd Cir.1985); *In re K & L Limited,* 741 F.2d 1023 (7th Cir. 1984); *Pacor v. Higgins,* 743 F.2d 984 (3rd Cir.1984); *In re Davis,* 730 F.2d 176 (5th Cir.1984); *Matter of Colorado Energy Supply, Inc.,* 728 F.2d 1283 (10th Cir.1984); *Kelley v. Salem Mortgage Co.,* 41 B.R. 420 (D.C.E.D.Mich.1984); *In re Earl Roggenbuck Farms, Inc.,* 51 B.R. 913 (Bktcy.E.D. Mich.1985); *In re American Energy, Inc.,* 50 B.R. 175 (Bktcy.N.D.1985); *In the Matter of McRae Fire Protection, Inc.,* 49 B.R. 773 (Bktcy.E.D.Mich.1985); *In re Hall,* 30 B.R. 799 (Bktcy.M.D.Tenn.1983). In doing so, courts tend to focus on the nexus between an allegedly "related" civil proceeding and the underlying bankruptcy case. Of the many standards articulated for determining whether a proceeding is related, the most inclusive test is "whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3rd Cir.1984); *In re General Distributors, Inc.,* 21 B.R. 888 (Bktcy.E.D.N.Y.1982); *In re Hall,* 30 B.R. 799 (Bktcy.M.D.Tenn.1983); *In re Pierce Coal & Const., Inc.,* 49 B.R. 779 (Bktcy.E. D.Mich.1985).

■ Clearly, the outcome of the third party action in this case cannot conceivably have any effect on the debtor's estate. Although at least two of the alleged preferences in the main action arise from the same set of facts as the third-party complaint, the sole legal issue in the third-party action appears to be the question of whether the debtor or Peterson himself is indebted to Borreson for $44,000.00, and that issue will be resolved to determine whether Borreson received preferential transfers from the debtor corporation. The dispute is between two non-debtors over who should be ultimately responsible for sums recovered from Borreson in the main action.[4] As it stands, the trustee will recover preferences from Borreson or he will not. If the trustee prevails, Borreson will seek reimbursement from Peterson. The third-party action will have no bearing on whether or to what extent the estate recovers allegedly preferential payments. Thus, even under this liberal test, Borreson's third-party complaint is not a related proceeding and therefore falls outside of the jurisdictional grant of 28 U.S.C. § 1334.

■ Absent an independent basis for jurisdiction a federal court is empowered to adjudicate state law claims under the doctrine of ancillary jurisdiction.[5] The test for ancillary jurisdiction, which generally permits a court to exercise jurisdiction over a closely related third-party complaint, is applicable only under limited circumstances:

Ancillary jurisdiction may only operate when there is a tight nexus with the subject matter properly in federal court. This nexus or logical relationship between the main federal claim and the incidental state claim arises (1) when the same aggregate of operative facts serves as the basis for both claims or (2) when the core of facts supporting the original claim activates legal rights in favor of a party defendant that would otherwise remain dormant.

---

4. A claim for indemnity or contribution, if successful, will merely adjust the rights between the defendant and the third-party defendant. The defendant alone remains potentially liable to the plaintiff in the main action.

5. Presumably Borreson's claim for indemnity or contribution is based on state law. There is no federal general common law, *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and "[a]bsent some Congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of states or our relations with foreign nations, and admiralty cases." *Texas Industries, Inc. v. Radcliff Materials,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). There is certainly nothing in Title 11 to suggest that Congress expressly or implicitly intended to create a right to contribution or indemnity.

*Eagerton v. Valuations, Inc.,* 698 F.2d 1115 (11th Cir.1983) (citations omitted). Borreson's third-party complaint does arise out of the same facts as at least two of the preference payments in dispute in the main action. More importantly, courts uniformly hold that a defendant's claim against a third-party defendant under Rule 14, Fed. R.Civ.P., is within the ancillary jurisdiction of the federal courts. *See, e.g., In re Wood,* 52 B.R. 513 (Bktcy.N.D.Ala.1985); *Rogers v. Aetna Cas. Insur. Co.,* 601 F.2d 840 (5th Cir.1979); *In re Albert & MacGuire Secs. Co.,* 70 F.R.D. 361 (D.C.Pa. 1976); *Wright & Miller,* FEDERAL PRACTICE & PROCEDURE: CIVIL § 1444.

■■■ The dispute between Borreson and Peterson is before this court on the third-party complaint of Borreson, who was himself named as a defendant in an action brought pursuant to 11 U.S.C. § 547. Rule 14, Fed.R.Civ.P., which is made applicable to this proceeding by Bankruptcy Rule 7014, governs third-party practice and provides in pertinent part:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to him for all or part of the plaintiff's claim against him.*
>
> . . . . .
>
> The person served with the summons and third-party complaint, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. . . .

Fed.R.Civ.P. 14 (emphasis added). The primary purpose of Rule 14 is to promote judicial efficiency and it is intended to provide a mechanism for disposing of multiple claims arising from a single set of facts in one action. *Colton v. Swain,* 527 F.2d 296 (7th Cir., 1975); *Eastman Chemical International, Ltd. v. Virginia National Bank,* 94 F.R.D. 21, (D.C.Tenn.1981); *Tiesler v. Martin Paint Stores,* 76 F.R.D. 640 (D.C. Pa.1977); *In re Joyanna Holitogs, Inc.,* 21 B.R. 323 (Bktcy.S.D.N.Y.1982). A third-party action is proper only when the third-party's liability is somehow dependent on the outcome of the main action or when the third party is secondarily liable to the defendant. *Hefley v. Textron, Inc.,* 713 F.2d 1487 (10th Cir.1983); *U.S. v. Joe Grasso & Son, Inc.,* 380 F.2d 749 (5th Cir.1967); *Index Fund, Inc. v. Hagopian,* 417 F.Supp. 738 (S.D.N.Y.1976). In order to maintain a third-party complaint, a direct line of liability must be alleged to exist between the third-party plaintiff and third-party defendant. *Moorhead Construction Company, Inc. v. City of Grand Forks,* 508 F.2d 1008 (8th Cir.1975), *citing* 6 Wright and Miller, *Federal Practice and Procedure* § 1442. It is not enough that the third-party claim is alleged to stem from the same transaction. *Nagunst v. Western Union Tel. Co.,* 76 F.R.D. 631 (D.C.Kansas 1977). Finally, while Rule 14 should be liberally construed, the permissibility of a third-party action is committed to the discretion of the court. *Farmers & Merchants Mutual Fire Insurance Company v. Pulliam,* 481 F.2d 670 (10th Cir.1973); *General Electric Company v. Irvin,* 274 F.2d 175 (6th Cir.1960); Wright and Miller, *Federal Practice & Procedure: Civil § 1443.*

■■ Borreson's third-party complaint does arise out of the same factual circumstances as the trustee's preference action. The outcome of the preference action with respect to two of the payments in particular[6] may well depend on resolution of the issue of whether the debtor or Peterson himself owes Borreson $44,000.00. That same question appears to be the sole issue in the third-party complaint. Furthermore,

---

**6.** The trustee seeks to recover transfers by checks totaling $43,856.68. The only two checks relevant to the third-party action are no. 8340 for $20,000.00 and no. 9076 for $10,000.00. Borreson claims both checks represent partial repayment of monies due on the cancelled contract. Peterson agrees that check no. 8340 was intended as repayment, but he suggests that check no. 9076 was for severance pay.

assuming there is a basis for the indemnity claim, Peterson's liability can be characterized as dependent on the outcome of the main action.[7] But again, this is not enough without some showing that there exists a direct line of liability between Borreson and Peterson, which brings us to the substance of the third-party complaint. Rule 14 is procedural only; impleader is properly limited to situations where a right to relief exists under the applicable substantive law. *Hefley v. Textron, Inc.*, 713 F.2d 1487 (10th Cir.1983); *Colton v. Swain*, 527 F.2d 296 (7th Cir.1975); *Murray v. Reliance Ins. Co.*, 60 F.R.D. 390 (D.C.Minn.1973).

The purpose of the inquiry into the substance of both counts of the third-party complaint is twofold. In addition to deciding whether the action is proper under Rule 14(a), which would in turn support ancillary jurisdiction, Peterson alleged that both counts of the complaint fail to state a claim upon which relief can be granted. In this regard Borreson correctly pointed out that a Rule 12(b)(6) motion shall be treated as one for summary judgment where matters outside the pleadings are presented to and not excluded by the court. Here Peterson submitted an affidavit together with his motion and that affidavit has not been excluded. Accordingly, that part of Peterson's motion alleging a failure to state a claim upon which relief can be granted shall be treated as a motion for summary judgment. Rule 56, Fed.R.Civ.P., which is made applicable to this proceeding by Bankruptcy Rule 7056, provides that summary judgment shall be granted where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". In deciding the summary judgment motion, I must view each fact in the light most favorable to Borreson, the non-moving party. *Snell v. United States*, 680 F.2d 545, 547 (8th Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 344, 74 L.Ed.2d 384 (1982); *Diebold v. Civil Service Comm'n*, 611 F.2d 697, 699–700 (8th Cir.1979); Fed.R.Civ.P. 56(c). In connection with the summary judgment motion, Peterson bears the burden of demonstrating that there exists no issue as to any material fact and that he is entitled to judgment as a matter of law.

■ First I must examine the substantive basis of the claim for indemnity or contribution. At the outset, taking every allegation as true, it is clear under these circumstances that Borreson seeks indemnification rather than contribution. Both indemnity and contribution are remedies based on equitable principles to secure restitution to one who has paid more than his just share of a liability. *White v. Johnson*, 272 Minn. 363, 137 N.W.2d 674 (1965). However the two remedies are significantly different in application, a distinction explained some 25 years ago by the Minnesota Supreme Court:

The principles governing contribution and indemnity are similar both in origin and in character. In modern law these principles comprise the subject that is treated under the general title of restitution. The principles of restitution are derived from the old common-law actions of general assumpsit and those which we now call quasi-contract and from the equitable principles of unjust enrichment. The basis of the right to restitution is the belief that men should restore what comes to them by mistake or at another's expense, and that it is unfair to retain a benefit or advantage which should belong to another. This statement is, however, merely a generalization of the more specific principles underlying the subject. Like most such generalizations, this is too vague to be of much assistance in the determination of specific cases. Al-

---

7. 11 U.S.C. § 550 provides in pertinent part: ... to the extent that a transfer is avoided under section 547 ... the trustee may recover ... the property transferred ... from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made ...

11 U.S.C. § 550(a)(1). Entity is defined to include a person. 11 U.S.C. § 101(14). It appears under the facts as alleged by Borreson that the trustee could seek recovery from either Borreson or Peterson.

though both contribution and indemnity rest upon this common concept, they are significantly different in specific application.

Contribution is the remedy securing the right of one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear. Contribution rests upon principles of equity. Indemnity is the remedy securing the right of a person to recover reimbursement from another for the discharge of a liability which, as between himself and the other, should have been discharged by the other.

... Contribution is appropriate where there is a common liability among the parties, whereas indemnity is appropriate where one party has a primary or greater liability or duty which justly requires him to bear the whole of the burden as between the parties.

*Hendrickson v. Minnesota Power and Light Co.*, 258 Minn. 386, 371, 104 N.W.2d 843 (1960) (citations omitted). The trustee seeks to recover allegedly preferential transfers. Borreson claims that Peterson, and not the debtor, is liable to him for $44,000.00. In the event the trustee prevails, Borreson in turn seeks to recover the entire amount from Peterson under principles of indemnity. The relief sought is an all or nothing proposition; the debt is either Peterson's or there is no grounds for recovery. In short, there is simply no basis for contribution.

With the focus properly on indemnity I must decide, treating each of Borreson's allegations as true, whether Peterson is entitled to judgment as a matter of law.[8] Borreson did not offer any legal or equitable support for the indemnity claim other than an allegation that it was Peterson who received the benefit of the alleged preferential transfers. Peterson asserted

that he is not indebted to Borreson personally and that he received no benefit from the debtor's payments to Borreson. After reviewing the principle of indemnity and the relevant case law I have concluded that under these circumstances Borreson would not be entitled to reimbursement from Peterson for sums recovered from him in the preference action.

■ Indemnity is generally said to rest upon contract, either express or implied, but there are numerous exceptions which suggest that equitable principles must govern indemnity determinations. *Hendrickson v. Minnesota Power and Light Co.*, 258 Minn. 368, 104 N.W.2d 843 (1960) (citations omitted). Here there is not an indemnity contract establishing the requisite direct line of liability between Borreson and Peterson. Indemnity may also be recovered if the evidence establishes an implied contract, *Henderson v. Eckern*, 115 Minn. 410, 132 N.W. 715 (1911), but again there is nothing in this case to support such a finding.

Tort indemnity is based on a concept of primary and secondary liability and is generally granted when co-tortfeasors are liable for the injuries of a third party but one tortfeasor has breached a duty which he owed to both his co-tortfeasor and the third party. *Lunderberg v. Bierman*, 241 Minn. 349, 63 N.W.2d 355 (1953). Classic examples include an employer who is vicariously liable for acts of his employee and a retailer who sells a defective product and is entitled to indemnity from the manufacturer. Principles of tort indemnity are irrelevant here absent evidence of tort liability.

■ I have been unable to find a case even remotely similar to this one. I recognize however that indemnity is an equitable principle and that its application must turn on the facts of each case. *Sorenson v. Safety Flate, Inc.*, 298 Minn. 353, 216 N.W.2d 859 (1974); *Farr v. Armstrong*

8. Because dismissal is warranted by a lack of jurisdiction over the subject matter, I am reluctant to address the summary judgment issue, which of course constitutes a determination on the merits. However the jurisdictional analysis requires an examination of the merits of the indemnity claim. I think it is appropriate to hold Peterson to the summary judgment standard under these unusual procedural circumstances.

*Rubber Co.*, 288 Minn. 83, 179 N.W.2d 64 (1970). Succinctly stated, indemnity:

> rests upon the proposition that when one is compelled to pay money which in justice another ought to pay, the former may recover of the latter the sum so paid, unless the one making the payment is barred by the wrongful nature of his conduct.

*Lunderberg v. Bierman*, 241 Minn. 349, 63 N.W.2d 355 (1953), *quoting* Restatement, RESTITUTION § 76. Thus, Borreson takes the position that Peterson discharged a personal debt with corporate funds and benefitted from the alleged preferences, and that therefore he should be compelled to bear the financial burden.[9]

 In addition to the lack of case support, the facts as alleged by Borreson are not consistent with the equitable rationale behind indemnification. If Borreson is adjudged to have received preferential payments, he wants to be reimbursed. A preference determination would necessarily include a finding that the payment was made for or on account of a debt owed *by the debtor*. 11 U.S.C. § 547(b). Of course if it is the debtor that owes Borreson $44,-000.00, the third-party complaint fails. Therefore there is no possible justification for indemnity absent a finding that the debt is Peterson's *and* a determination that Borreson is liable to the trustee for the two preferences in question. Even under this scenario there is no equitable grounds for indemnity.

11 U.S.C. § 547(b) requires a showing that there was a transfer of an interest of the debtor in property for or on account of an antecedent debt owed by the debtor. If the debtor in this case did not owe Borreson the $30,000.00 at issue, a preference determination against Borreson would require a showing that: Peterson was a creditor of the debtor, the payments to Borreson were made for the benefit of Peterson (a creditor), and that the payments were made on account of an antecedent debt owed by the debtor. 11 U.S.C. § 547. Even under these circumstances indemnity is not appropriate because the Borreson preference would not result in Peterson being unjustly enriched. Borreson would simply be left to file a claim against the estate for the value of the preferences recovered. Bankruptcy Rule 3002(c)(3). *Ladd v. Perry*, 28 F.2d 975 (7th Cir.1928), *Aff'd.* 40 F.2d 265 (7th Cir.1930).

 Given this, I have concluded indemnity would not be applicable and that the claim must be dismissed. With respect to the claim for the return of $14,000.00 owed as a result of the rescission of the alleged stock purchase agreement, Borreson has undoubtedly stated a claim upon which relief can be granted. Peterson does not deny the existence of an agreement or the fact that Borreson is owed $44,000.00. Whether Borreson knew that the funds were deposited in the debtor's account and looked to the debtor for repayment is immaterial at this juncture; summary judgment is precluded where a material fact is in dispute. However the $14,000.00 claim, like the indemnity claim, must be dismissed. While nothing in Rule 14 precludes a defendant from asserting additional claims for his own injuries against a third-party defendant, the additional claim must arise out of the same transaction or

---

**9.** Borreson's defense essentially amounts to an assertion that the payments received allegedly for repayment of Peterson's personal debt were fraudulent transfers rather than preferences. 11 U.S.C. § 548 provides in relevant part:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . . . .

received less than a reasonably equivalent value in exchange for such transfer or obligation.

11 U.S.C. § 548(a)(2)(A). At the hearing the trustee stated that he intended to bring a motion to amend the original complaint to include a cause of action pursuant to § 548 directly against Peterson. Of course, if the trustee does so and ultimately prevails there will be no basis for the third-party indemnity claim because the trustee is only entitled to a single satisfaction. 11 U.S.C. § 550(c).

occurrence as the main claim establishing a direct line of liability between the third-party plaintiff and the third-party defendant. Because Borreson has failed to establish a direct line of liability between he and Peterson as required by Rule 14, the $14,000.00 claim must also be dismissed.

It is clear to me that the third-party complaint must be dismissed and there certainly are numerous grounds for doing so. As I stated earlier, Rule 14, Fed.R.Civ.P., is discretionary and a claim that lacks substance constitutes grounds for dismissal. *Thompson v. United Artists Theatre Circuit, Inc.*, 43 F.R.D. 197 (D.C.N.Y.1967). Even if the third-party complaint was proper, I would not choose to invoke the ancillary jurisdiction of this Court, which is also a matter committed to my discretion. *See, e.g., Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 477 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *United States Fidelity & Guaranty Co. v. Perkins*, 388 F.2d 771, 773 (10th Cir.1968); *Eastman Chemical International, Ltd. v. Virginia National Bank*, 94 F.R.D. 21, 22 (E.D.Tenn.1981); *Official Committee of Unsecured Creditors v. I. Hyman Corp. (In the Matter of Joyanna Holitogs, Inc.)*, 21 B.R. 323, 327 (Bktcy.S.D.N.Y.1982). Absent consent of the parties, the bankruptcy court is limited to submitting proposed findings of fact and conclusions of law to the district court in proceedings otherwise related to a bankruptcy case. 28 U.S.C. § 157(c). The dispute in question involves two non-debtors, in no way implicates property of the bankruptcy estate, and thus falls outside of the statutory jurisdictional grant of 28 U.S.C. § 1334 and is outside the ambit of 28 U.S.C. § 157(a) reference to bankruptcy judges. The primary purpose of ancillary jurisdiction is to avoid multiplicity of suits, a purpose which would not likely be met here in light of the requirements of 28 U.S.C. § 157(b) and (c).

Even absent the jurisdictional problems I would be inclined to dismiss the third-party complaint. 28 U.S.C. § 1334(c)(1) authorizes discretionary abstention in the interest of justice, or in the interest of comity with state courts or respect for state law. If indemnification were appropriate in this instance, it would at best be a question peculiar to an area of evolving state law, and this is true regardless of whether recovery in the main action is for a preference under 11 U.S.C. § 547 or a fraudulent transfer under 11 U.S.C. § 548. I feel strongly that the state court is the appropriate forum for the dispute between Borreson and Peterson, and if nothing else abstention is warranted in this instance.

Finally, it is evident that what Borreson really wants is an opportunity to recover the entire $44,000.00 owed to him. He has allegedly received $30,000.00 thus far and is owed an additional $14,000.00. In the event he must return the $30,000.00, nothing precludes him from pursuing Peterson for the entire $44,000.00 debt in state court.[10]

THEREFORE, IT IS ORDERED: The third-party complaint of John Borreson is dismissed in its entirety.

---

**10.** There is case law to support the proposition that the debt underlying a preferential transfer is reinstated. *See, e.g., In re Art Shirt Ltd., Inc.,* 34 B.R. 918 (Bktcy.E.D.Pa.1983); *In re Herman Cantor Corp.,* 15 B.R. 747 (E.D.Va.1981).